## Tournier v. Home Indemnity Insurance Company

*John V. Hasson*, for plaintiff.

*Joseph Head*, for defendant.

TREDINNICK, J., January 14, 1972.—Plaintiff, Robert P. Tournier, was seriously injured on April 25,

1969, in an automobile accident caused by the negligence of one Raymond J. Eddis. Eddis was not insured. Plaintiff was operating a Philadelphia Electric Company (PECO) vehicle in the course of his regular employment with the company. PECO does not carry a liability insurance policy on its vehicles, but rather, self-insures such liability to the extent of $100,000. It carries a policy labeled "excess liability insurance" with Home Insurance Company, defendant herein, to protect itself against losses which exceed $100,000 up to $1,000,000. Plaintiff contends that this policy is a "motor vehicle liability policy of insurance," and, as such, must afford uninsured motorist coverage to him under the provision of section 1 of the Uninsured Motorists' Act of August 14, 1963, P. L. 909, sec. 1, as amended, 40 PS §2000. Defendant filed a motion for summary judgment, and the motion was granted. Plaintiff's appeal necessitates this opinion in support of that judgment.

Section 1 of the Uninsured Motorists' Act, supra, provides in essence that: "No motor vehicle liability policy of insurance . . . shall be delivered . . . unless coverage is provided therein . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. . . ." If the policy involved in this case is a "motor vehicle liability policy of insurance", it would be deemed to include the requisite coverage, whether so stated in the insurance contract or not. If it is not such a policy, then the coverage is not afforded, and plaintiff has no cause of action. We concluded the latter to be the case.

The Statutory Construction Act, in section 33 thereof, provides that: "Words and phrases shall be construed according to rules of grammar and accord-

ing to their common and approved usage, but technical words and phrases and such others as have acquired a peculiar and appropriate meaning . . . shall be construed according to such peculiar and appropriate meaning . . .": Act of May 28, 1937, P. L. 1019, art. III, sec. 33, 46 PS §533.

We are inclined to the belief that the phrase "motor vehicle liability policy of insurance" is a technical phrase, since such policies are closely regulated by the Commonwealth; however, we are also of the opinion that the "common and approved" usage of the phrase coincides with its technical definition. However viewed, the policy in question clearly does not fall within the ambit of a "motor vehicle liability policy of insurance."

There are two basic types of insurance against losses incurred as a result of potential or actual liability to others: "liability contracts" and "indemnity contracts." A liability contract involves an agreement on the part of the insurer to defend the insured against claims of third parties, and to pay any amounts due such third parties on behalf of the insured. An indemnity contract, on the other hand, is enforceable against the insurer only when the insured has sustained an actual loss, having paid a third party claimant. Whether a particular contract of insurance is one or the other depends upon the intention of the parties as evidenced by their contract: Malley v. American Indemnity Co., 297 Pa. 216 (1929).

The policy in question clearly demonstrates that the parties intended and achieved an indemnity contract. It begins with the statement that "The Company (Defendant) agrees to *indemnify* the insured for ultimate net loss in excess of the retained limit ($100,000)." The phrase "ultimate net loss" is defined as "The sum

actually paid in cash in the settlement or satisfaction of losses for which the insured is liable either by adjudication or compromise. . . ." There is no agreement on the part of the insurer to defend PECO, nor is there any requirement that immediate notice of a claim must be given the insurer. Both such provisions are earmarks of the liability contract: Malley v. American Indemnity Co., supra. Rather, the provisions of the contract in this regard confirm its indemnity character. The defense of claims is to be undertaken by PECO, and they are to be reimbursed for a proportionate share of legal expense in the event the net loss exceeds $100,000. Instead of the normal immediate notice provisions of the liability contract, PECO is simply required to give notice of a claim only in the event it reasonably appears that liability in excess of $100,000 is involved. There are other distinctions between a standard automobile liability policy and the contract involved in this case, but we deem the foregoing to be sufficient to establish its identity as an indemnity contract.

Finally, we note that although this appears to be a case of first impression in this Commonwealth, the Supreme Court of Virginia reached the same result in a closely analogous case. See Shelton v. American Re-Insurance, 173 S.E. 2d. 820 (Virginia, 1970).

Since the policy is not a "motor vehicle liability policy of insurance," it is not subject to the provisions of the Uninsured Motorists' Act, and the benefits of the act are not available to plaintiff. Accordingly, we were required to enter summary judgment for defendant.